# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALLEY RESEARCH, INC., <br><br> Plaintiff, <br> vs. <br><br> VERENIUM CORPORATION, as successor-in-interest to DIVERSA CORPORATION, <br><br> Defendant. | CASE NO. 07cv1317 BTM(RBB) <br><br> **ORDER GRANTING MOTION TO REMAND** |
| VERENIUM CORPORATION, as successor-in-interest to DIVERSA CORPORATION, <br><br> Counterclaimant, <br> vs. <br> VALLEY RESEARCH, INC. dba VALLEY ENZYMES, and ROES 1-15, <br><br> Counterdefendants. | |

Plaintiff Valley Research, Inc. ("Plaintiff" or "VR") has filed a motion to remand this action to state court. For the reasons discussed below, Plaintiff's motion to remand is **GRANTED**.

## I. BACKGROUND

On December 7, 2006, VR filed its original complaint against Diversa in San Diego Superior Court for the County of San Diego. VR is an Indiana corporation. The complaint alleged that Diversa had a principal place of business in California. (Leventhal Decl., Ex. A.)

On January 8, 2007, Diversa filed an answer and cross-complaint.

Subsequently, VR notified Diversa of its intent to file an amended complaint. Diversa refused to stipulate to the amended complaint. (Leventhal Decl. ¶ 12.) On June 20, 2007, Diversa consummated a merger transaction with Celunol Corporation ("Celunol") and became Verenium Corporation ("Verenium"). (McCarthy Decl. ¶ 2.) On July 3, 2007, Verenium's counsel contacted VR's counsel and indicated that Verenium was willing to stipulate to the filing of an amended complaint given earlier comments by the presiding judge that he did not see a basis for denying leave to amend at that time. (Leventhal Decl. ¶ 16.)

Counsel for VR sent a proposed amended complaint to counsel for Verenium and asked counsel for Verenium to forward suggested changes. (Leventhal Decl., Ex. I.) Counsel for Verenium made changes to the proposed amended complaint which were reflected in a red-lined version of the document. (Leventhal Decl., Ex. J.) The changes suggested by counsel for Verenium included, among other things, substituting "Verenium, as successor-in-interest to Diversa" in place of "Diversa" in the caption and "Diversa, as predecessor in interest to Verenium" in place of "Diversa" in the body of the complaint. Counsel for Verenium also inserted the following paragraph in the "Parties and Preliminary Allegations" section of the complaint:

> Verenium Corporation ("Verenium") is a Delaware corporation, with its principal place of business in Cambridge, Massachusetts, qualified to do business and doing business in the State of California. Verenium is the successor in interest to Diversa Corporation ("Diversa"), which merged on June 20, 2007, with Cellunol Corporation. As stated herein, Verenium and Diversa shall be used interchangeably.

On July 10, 2007, VR filed the amended complaint with all of Verenium's suggested revisions.

On July 19, 2007, Verenium filed its notice of removal on the basis of diversity jurisdiction.

## II. DISCUSSION

VR contends that Verenium's principal place of business is California, not Massachusetts, as it was led to believe. Thus, VR moves to remand this action to state court

on the ground that it was removed in violation of the "forum defendant" rule set forth in 28 U.S.C. § 1441(b). As discussed below, the Court finds that Verenium has failed to establish by a preponderance of evidence that its principal place of business is Massachusetts (or any other state besides California). Therefore, the Court grants VR's motion to remand.

As an initial matter, Verenium argues that VR has waived its right to seek a remand by filing a jury demand, a motion to seal documents, and an ex parte application to reschedule the ENE conference. Verenium also points to VR's objections to discovery in which VR cited to the Federal Rules of Civil Procedure. The Court is not persuaded by Verenium's waiver argument. The Court agrees with the courts that have held that the prompt filing of a jury demand is necessary to protect the plaintiff's right to a jury trial in the event that the case is not remanded and should not be construed as a waiver of the right to remand. See, e.g., Student A. v. Metcho, 710 F. Supp. 267, 269 (N.D. Cal. 1989). The motion to seal documents and ex parte application to reschedule the ENE conference were filed *after* the motion to remand and did not seek substantial relief. Furthermore, the motion to seal was filed after Verenium complained that some of the exhibits attached to VR's Answer to Verenium's Amended Cross-Complaint contained "confidential information," as defined by the parties' Distribution Agreement. Finally, VR's citation to the Federal Rules of Civil Procedure in its discovery objections does not rise to the level of consent to this Court's jurisdiction. Accordingly, the Court turns to the merits of VR's motion to remand.

The rule limiting removal on the basis of diversity jurisdiction to instances where no defendant is a citizen of the forum state is a procedural rule, not a jurisdictional one. Lively v. Wild Oats Markets, Inc., 456 F.3d 933 (9th Cir. 2006). Nevertheless, Verenium bears the burden of showing that it has complied with the rule – i.e., that it is not a citizen of California. Schwartz v. FHP Int'l Corp., 947 F. Supp. 1354, 1360 (D. Ariz. 1996). A corporation is a citizen of the state in which it is incorporated as well as the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). Verenium is incorporated in Delaware. This inquiry, therefore, focuses on the state where Verenium has its principal place of business.

1       Courts generally apply one of two tests to determine in which state a corporation has its principal place of business. Industrial Tectonics, Inc. v. Aero Alloy, 912 F.2d 1090, 1092-93 (9th Cir. 1990). Under the "place of operations test," the principal place of business is the state which contains a "substantial predominance" of corporate operations. Id. Under the alternative test, the "nerve center" test, a corporation's principal place of business is where its executive and administrative functions are performed. Id. The "nerve center" test applies where "no state contains a substantial predominance of the corporation's business activities." Id. at 1094.

      In determining whether a corporation's business activity substantially predominates in a given state, the court must make a comparison of the corporation's business activity in the state at issue to its business activity in other individual states. Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 500 (9th Cir. 2001). "Substantial predominance" does not "require the majority of a corporation's total business activity to be located in one state, but instead, requires only that the amount of [the] corporation's business activity in one state be significantly larger than any other state in which the corporation conducts business." Id. Factors that can be considered in making the "substantial predominance" inquiry include the location of employees, tangible property, production activities, sources of income, and where sales take place. Id.

      Verenium contends that no state contains a substantial predominance of its business activity and that, therefore, the "nerve center" test applies. Under the "nerve center" test, Verenium's principal place of business is Massachusetts, where Verenium's executive and administrative offices are located. VR disputes the applicability of the "nerve center" test and contends that the amount of Verenium's business activity in California is significantly larger than any other state.

      Upon review of the evidence submitted to the Court, the Court concludes that Verenium has failed to show that its business activity does not substantially predominate in

California.[1]  VR has presented evidence suggesting that Verenium's principal place of business is in California, and Verenium has failed to establish otherwise.

According to Verenium's Form 10-Q for the period ended June 30, 2007, Diversa was renamed "Verenium Corporation" after the merger with Celunol. (Fissel Decl. Ex. 10.) Celunol continued as a surviving corporation and was renamed Verenium Biofuels Corporation, which operates as a wholly-owned subsidiary of Verenium. (Id.)  Prior to the merger, Diversa clearly was the larger operation of the two. Verenium's unaudited, pro forma financial statements for the year ended December 31, 2006, show the following:

|  | **Diversa** | **Celunol** |
|---|---|---|
| **Total Assets:** | $79,905,000 | $11,637,000 |
| **Total Liabilities:** | $26,594,000 | $6,118,000 |
| **Total Costs & Expenses:** | $89,773,000 | $8,462,000 |
| **Total Revenues:** | $49,198,000 | $ 274,000 |

(Fissel Decl., Ex. 9.)

Verenium's unaudited pro forma financial statements for the first quarter of 2007 show the following:

|  | **Diversa** | **Celunol** |
|---|---|---|
| **Total Assets:** | $168,540,000 | $15,998,000 |
| **Total Liabilities:** | $ 24,636,000 | $ 7,199,000 |
| **Total Costs & Expenses:** | $ 21,861,000 | $ 4,865,000 |
| **Total Revenues:** | $ 11,308,000 | $ 68,000 |

(Fissel Decl., Ex. 9.)

As of July 19, 2007, there were approximately 255 total employees of Verenium. Eight are located in Florida, 24 in Massachusetts, 40 in Louisiana, 182 in San Diego, and one

---

[1] Although, as a general matter, removability should be determined from the face of the pleadings, the Court believes that it is appropriate to go beyond the pleadings when it must resolve the factual matter of whether the removing defendant is a forum defendant and whether the case was actually removable under 28 U.S.C. § 1441(b). See, e.g., El Chico Restaurants, Inc. v. Aetna Cas. and Surety Co., 980 F. Supp. 1474, 1482 (S.D. Ga. 1997) (considering affidavit submitted by defendant to reach the conclusion that the defendant was not a local defendant as alleged by the plaintiff).

in Mexico. (Jones Decl., ¶ 3.) These figures are persuasive evidence that a substantial predominance of Verenium's business activity is in California.

Verenium argues that a majority of the San Diego employees are scientists, research associates, analysts, engineers, or technicians who would have "limited or no routine interaction with the public" and that, therefore, minimal weight should be placed on the number of employees in California. Verenium's argument is unpersuasive. The Court has no reason to believe that the employees in San Diego are not visible to the public eye.

According to Verenium, the state that generated the most U.S. revenue (for the six-month period ending June 30, 2007) was Illinois (27%), followed by New Jersey (22%), and Virginia (16%). Verenium also points out that product sales were distributed across ten states, with only 12% from California, 35% from Ohio, 17% from Kentucky, 12% from Georgia, and the remainder being distributed across six other states. Similarly, vendor payments were distributed across 40 states, with New York at 46%, Massachusetts at 22%, California at 15%, and Pennsylvania and Illinois at 2% each. Verenium's final goods inventory is primarily maintained in Mexico (96%) and Nebraska (4%).

However, the pertinent inquiry is what percentage of Verenium's revenue, product sales, purchases, and inventory are attributable to Verenium's California, Florida, Louisiana, and/or Massachusetts *operations*. In Industrial Tectonics, 912 F.2d at 1093, the Ninth Circuit concluded that the majority of ITI's business took place in California because "ITI's California *operations* account for 61% of ITI's fiscal sales, 69% of ITI's operating income, 64% of ITI's receivables, and 75% of ITI's inventories." (Emphasis added.) Similarly, in Tosco, 236 F.3d at 501-02, the Ninth Circuit looked to which operation the sales and inventory could be attributed. Verenium has not provided any information regarding what percentage of its revenues, sales, inventory, or purchases relate to the California, Florida, Louisiana, and/or Massachusetts operations.

Verenium argues that its production activities do not favor California because over 90% of production occurs in Mexico pursuant to an agreement with Fermic, one of the largest fermentation laboratories in Latin America. However, this production by a third-party has little

relevance to our analysis. The Court is concerned with the amount of business activity in California, Florida, Louisiana, and Massachusetts, the states where Verenium conducts corporate operations. Verenium concedes that the remaining 10% of production takes place in California and that no production activity takes place in Florida, Louisiana, or Massachusetts.

Verenium also argues that the majority of its property, plant and equipment ("Net PPE") is located in Louisiana. Verenium claims that as of June 30, 2007, Verenium had almost $39.35 million in Net PPE, with approximately 72% ($28.42 million) in Louisiana, 25% in Mexico, 2% in Massachusetts, and 1% in California. (Black Decl. ¶ 9.) However, it appears that much of Louisiana's PPE value is attributable to a demonstration facility ($17.54 million) that is currently under construction and is not currently operating.

Considering all of the evidence before it, the Court concludes that Verenium has not satisfied its burden of showing that it is not a citizen of California. It appears that at the time of removal, Verenium's business activities substantially predominated in California, rendering Verenium a forum defendant who could not remove the action. Therefore, the Court grants VR's motion to remand the action to state court.

Although the Court finds that Verenium has not *satisfied its burden* of showing that it is not a California citizen, the Court concludes that Verenium had a reasonable basis for removal. Therefore, the Court denies VR's motion for attorney's fees and costs. See Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).

///
///
///
///
///
///
///
///

### III. CONCLUSION

For the reasons discussed above, Plaintiff's motion to remand is **GRANTED**. This action is **REMANDED** to the Superior Court of California, County of San Diego. The Court denies Plaintiff's requests for attorney's fees and costs associated with bringing the motion to remand. The Court does not rule on the other pending motions in this case.

**IT IS SO ORDERED.**

DATED: December 17, 2007

_____
Honorable Barry Ted Moskowitz
United States District Judge